**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

**CIVIL NO. 1:05CV312
(1:01CR52-14-T)**

| | | |
|---|---|---|
| **ROBERT LIONEL SISK,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **O R D E R** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate,
Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 [Doc. No. 1];
on the Government's Motion for Summary Judgment [Doc. No. 6]; and on
"Movant's Traverse Brief" [Doc. No. 11].

## I.  STANDARD OF REVIEW

Rule 56(e)(2) reads in pertinent part as follows:

> When a motion for summary judgment is properly made
> and supported [by affidavits], an opposing party may not
> rely merely on allegations or denials in its own pleading;
> rather, its response must – by affidavits or as otherwise
> provided in this rule – set out specific facts showing a
> genuine issue for trial.  If the opposing party does not so
> respond, summary judgment should, if appropriate, be
> entered against that party.

The Court carefully has considered the parties' arguments along with the relevant law and determined that Respondent's Motion for Summary Judgment should be granted.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

On March 27, 2003, Petitioner and 13 co-defendants were charged with conspiring to possess with intent to distribute cocaine and metham-phetamine ("meth," hereafter), in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1) and 856. [1:01cr52-14, Doc. 3].  After pleading not guilty, Petitioner and two of his co-defendants (the Garcias) proceeded to a jury trial.[1]

At the outset of the trial, the Court entertained Petitioner's attorney's motion for copies of the "statements of anybody that's appeared, any witnesses that have been before the grand jury, that type of thing."  [Trial Tr., Vol. I at 23-24].  The prosecutor, however, denied having any exculpa-tory information which had not already been provided through the Government's open-file discovery process. [Id. at 26].  Therefore, the Court denied the motion as moot, and defense counsel was satisfied.  [Id. at 24].

_____

[1]Petitioner's trial was conducted by the Honorable Lacy H. Thornburg, United States District Judge, retired.  Thus, this Motion was reassigned to the undersigned for disposition.

Defense counsel also asked for the "production of statements under Rule 26(2)." [Id. at 25 and 27].  Counsel explained that he initially had received redacted copies of discovery documents, and had been unable to identify the witnesses.   [Id. at 25].  Counsel also stated that he had not received copies of the witnesses' criminal histories or plea agreements. [Id.].  Thus, defense counsel asked the Court to order the Government to comply with his requests, or to impose sanctions for any failure to comply. [Id.].  Defense counsel, however, subsequently conceded that he had "seen what they've got," and that his request was based upon his concerns about potential 404(b) evidence being proffered through those witnesses. [Id. at 29].  Thus, when the prosecutor indicated that she had placed all of that information in her open file and was not proposing to use any 404(b) evidence against Petitioner, defense counsel was satisfied with what he already had received.  [Id. at 25-27].

Thereafter, the Government called several witnesses, nine of whom testified against Petitioner.  Co-conspirator Larry Patterson testified that he initially became acquainted with Petitioner through car-related interests, but he subsequently made meth purchases from him. [Id., Vol. II at 187-88].  Patterson stated that he bought about an ounce of meth from Petitioner at least once per month for 1½ to 2 years. [Id. at 188-89].

Co-conspirator Tony Branch testified that in addition to having purchased large quantities of meth from the Garcias, he also purchased a total of about 17 grams of meth from Petitioner in 3.5 gram quantities on four to five occasions. [Id. at 263-65].

Co-conspirator Kaythe McCurry testified that she met Petitioner through her boyfriend, Larry Patterson. [Id. at 333-34].  McCurry stated that she had witnessed Petitioner's multiple deliveries of meth to Patterson. [Id.at 335].  Two of those deliveries involved one to two ounces of meth. [Id.].  McCurry also told the jury about an occasion when she, Patterson and several other people smoked meth at Petitioner's home. [Id. at 336].

Co-conspirator Ricky Moore testified that he had known Petitioner for 8 to 10 years; that he purchased various quantities and types of drugs from him, including meth and cocaine, on multiple occasions; that on one such occasion, he purchased a half ounce of meth from him; and that there was another occasion while he was negotiating the sale of meth to Petitioner when Petitioner acknowledged that he and Moore both were being supplied by "the Mexicans." [Id. at 397-99].

The Government also called three of Petitioner's customers as witnesses.  For example, James Heffernan stated that he became acquainted with Petitioner when he periodically performed construction/

carpentry services at Petitioner's two homes. [Id. at 304-06].  He stated

that Petitioner initially paid him in cash, then partly with cash and meth,

then entirely in meth. [Id. at 305-06].  He also testified that he purchased

one to two ounces of meth from Petitioner nearly each week over the

course of a year; that he observed as much as a pound of meth at

Petitioner's residence on one or more occasions; and that he saw

Petitioner with large amounts of cash on occasion. [Id. at 307-09].

Eric Heffernan, James' brother, testified that he also periodically

worked at Petitioner's homes; that he bought drugs, including meth, from

Petitioner several times per week; and that he first bought small quantities,

but eventually made larger purchases over a three to four-month period.

[Id. at 344-46].  Eric also stated that he had seen ounce-sized packages of

meth and cocaine in Petitioner's home on some of those occasions. [Id. at

347].

William Clontz testified that he had known Petitioner all of his life;

that he purchased varying amounts of meth from him on numerous

occasions; that on at least two of those occasions, he saw ounce-sized

packages of meth at Petitioner's residence; and that he had heard Peti-

tioner say that he was being supplied by "the Mexicans."  Clontz also told

the jury that he had given statements to law enforcement officers on multiple occasions. [Id. at 403-10].

The Government also presented evidence from two law enforcement officers. Ricky Crisp, a McDowell County Deputy Sheriff, testified that he responded to the scene of an accident where Petitioner was found slumped over the steering wheel of his vehicle. [Id. at 240-41]. Petitioner was found in possession of more than 98.0 grams of meth, about $1,000 in cash, and a razor blade. [Id. at 244, 247]. Special Agent Michael Althoff of the Drug Enforcement Administration testified that he searched Petitioner's residence and located a small quantity of meth, a set of digital scales, chemicals for manufacturing that drug, and papers with some of Petitioner's co-conspirator's telephone numbers on them. [Id. at 356-64].

For his part, Petitioner called his sisters, Rebecca Sisk Kendrick and Debra Howell as defense witnesses. Kendrick testified that over the preceding years she had made daily visits to Petitioner's home, but never saw drugs there; that she only saw family members visiting Petitioner on those occasions; and that she never observed Petitioner make any drug deals. [Id. at 471-75]. Howell testified that she saw her brother nearly everyday before his arrest; that she never observed any drugs or drug deals involving Petitioner; and that she only saw family members and

friends coming by to purchase car-related materials from him. [Id. at 481-83].

At the conclusion of the testimony, the Court denied Petitioner's motion for dismissal or acquittal. Thereafter, on November 16, 2001, the jury returned guilty verdicts against Petitioner and the Garcias. [1:01cr52-14, Doc. 194]. The jury's verdicts reflect specific findings that this conspiracy involved, *inter alia*, at least 50 grams of meth. [Id.].

After the Court denied Petitioner's post-trial motion for acquittal or a new trial, Petitioner replaced trial counsel with another attorney. [1:01cr52-14, Doc. 255]. New counsel objected to the Pre-Sentence Report arguing, in part, that Petitioner was accountable for less than 200 grams of a meth mixture and less than 2 kilograms of cocaine; and that he was not a career offender. [1:01cr52-14, Doc. 437]. On June 18, 2002, this new counsel filed a Sentencing Memorandum arguing that in the absence of reliable evidence of a direct link between Petitioner and the Garcias (a.k.a. "The Mexicans"), Petitioner could only be sentenced for 17 ounces of meth; and that his Total Offense Level was 26. [1:01cr52-14, Doc. No. 295]. Counsel subsequently filed another Memorandum asserting that there was no quantity of cocaine for which Petitioner could be held accountable. [1:01cr52-14, Doc. No. 297].

The Government filed a Memorandum asserting that Petitioner could be held accountable for involvement with 2,051.56 grams[2] of meth without imputing any quantities to him under the Pinkerton[3] theory of liability; that given the strength of the evidence of his involvement with meth and the high Guideline range which corresponded to that involvement, there was no need to punish him for involvement with cocaine; and that Petitioner was a career offender. [1:01cr52-14, Doc. No. 298]. Thus, the Government asserted that the corresponding sentencing range for Offense Level 34 and Criminal History Category VI was 262 to 327 months imprisonment. [Id.].

After hearing from the attorneys during Petitioner's July 1, 2002 sentencing hearing and denying defense counsel's request for a downward departure, the Court determined that his Total Offense Level was 34. [Tr. Of Sentencing hearing of July 1, 2002, at 26]. The Court also determined, by virtue of the information in his Pre-Sentence Report, that Petitioner was a career offender. [Id.]. Thereafter, Petitioner apologized to the Court and his family for having allowed his addiction to cause him to commit the subject offense, and he asked the Court for leniency. [Id. at 28]. Ultimately, the

---

[2] 2,051.56 grams converts to 72.366 ounces.

[3] Pinkerton v. United States, 328 U.S. 640, 645 (1946) (holding that a conspirator may be convicted of and punished for substantive offenses committed in the course of and in furtherance of the conspiracy by co-conspirators.

Court sentenced Petitioner to 276 months imprisonment. [1:01cr52-14, Doc. 307].

Petitioner timely filed a Notice of Appeal on July 11, 2002 [1:01cr52-14, Doc. 306].  On appeal, Petitioner raised a number of challenges, including claims that the evidence was insufficient to support the jury's finding that the conspiracy involved at least five kilograms of cocaine; that there was insufficient evidence to support a finding that he was involved in a single conspiracy; and that the Court improperly calculated the drug quantity which was attributable to him.  The Fourth Circuit, however, rejected all of Petitioner's claims. United States v. Sisk, 87 Fed. Appx. 323, 327-31 (4th Cir. Feb. 12, 2004).  Indeed, while the appellate Court found that this Court had instructed the jury improperly that the Government needed to prove *both* of the objects of the conspiracy, such error did not require reversal because the Government's evidence convincingly established one of the objects of the conspiracy, i.e., that Petitioner and his co-defendants had conspired to traffic in at least fifty grams of meth.  Id. at 327-28. Consequently, the Circuit Court affirmed Petitioner's conviction and sentence; and the Supreme Court denied his petition for certiorari.  Id. at 332; United States v. Sisk, 543 U.S. 882 (2004).

Thereafter, on February 13, 2005, Petitioner, acting *pro se*, filed the instant Motion to Vacate raising numerous claims against his trial and appellate attorneys.  Among those allegations, Petitioner claims that trial and appellate counsel  failed to ensure the Government's compliance with the Jencks Act, and to raise that non-compliance on appeal; that they failed to object to and/or challenge certain comments made by the prosecutor; that trial counsel failed to subject the Government's case to the required adversarial testing, and appellate counsel raised a frivolous challenge to the sufficiency of the evidence; and essentially that his attorneys mishandled the challenges to his being sentenced as a career offender.

III.    **Petitioner's Arguments Regarding Ineffective Assistance of Counsel**

To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally defi-cient representation.  Strickland v. Washington, 466 U.S. 668, 687 (1984); Fields v. Attorney General of State of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).  In measuring counsel's performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable profes-sional assistance.  Strickland, 466 U.S. at 689.  Furthermore, in consider-

ing the prejudice prong of the analysis, a court "can only grant relief under

. . . Strickland if the 'result of the proceeding was fundamentally unfair or

unreliable.'"  Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) , quoting

Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).  The petitioner "bears the

burden of proving Strickland prejudice," Fields, 956 F.2d at 1297, citing

Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), and if the

petitioner fails to meet this burden, a reviewing court need not consider the

performance prong.  Fields, 956 F.2d at 1290.

### A.  Jencks Act claim

Petitioner claims that William Clontz's admission that he gave state-

ments to law enforcement officers along with the prosecutor's failure to

produce such statements constituted a Jencks Act violation; and that his

attorneys improperly handled that violation by failing to ensure compliance

and to raise the issue of non-compliance on appeal.

The Jencks Act, codified at 18 U.S.C. 3500 et seq., requires the

Government to produce statements made by a witness that relate to the

subject matter of his or her direct examination.  Under the Act, a "state-

ment" is defined as "a written statement that has been signed or adopted by

the witness or a transcription of an oral statement of a witness that is

substantially verbatim."  United States v. Brothers Const. Co. Of Ohio, 219

F.3d 300 (4th Cir. 2000) (emphasis added).  The Act, however, does not cover an investigator's notes of an interview with a witness unless the witness reviews and approves such notes.  United States v. Roseboro, 87 F.3d 642, 645 (4th Cir. 1996).

In the instant case, there simply is no evidence that the Jencks Act was violated.  Petitioner unwisely rests this claim on Mr. Clontz's testimony that he gave "statements" to law enforcement officers on several occasions. This testimony merely proves, however, that Clontz spoke with investigators.  Notably, as the Government points out, Clontz did not testify that he provided written statements to the officers, that he previously read and approved of any notes which were taken during his talks, or that notes even were taken on those occasions.  Furthermore, Petitioner has not alleged a single fact or forecast any evidence as to the existence of any such qualifying written statement by Clontz.  Instead, Petitioner merely speculates that such statements must exist since Clontz underwent several interviews. Suffice it to say, however, such speculation is entirely inadequate to withstand the Government's Motion for Summary Judgment on this claim.  To put it simply, there is no evidence of a written statement which the Government withheld, let alone evidence that Petitioner's

attorneys failed to address any such withholding adequately.[4]  Therefore,

this claim must be rejected as factually baseless.

## B.  Mishandling of prejudicial comments

Petitioner alleges that his trial and appellate attorneys improperly

handled certain comments which the prosecutor made during the rebuttal

portion of her closing argument.  Petitioner takes issue with the following

statements:

> We also heard a lot of evidence about Rassie
> Rector and who he was introduced to and where
> he was seen.  He was seen both at Mr. Sisk's
> home and in the video store.  What do we have?
> Connections.  Also, connections to Mr. Branch
> who as you recall was introduced through them,
> both to Mr. Branch's business, the video store,
> Mr. Branch's home.  And Rassie Rector to the
> video store.
>
> What does that say, members of the jury?  That
> the witnesses are believable.    That they're
> credible.  This is independent evidence of that.
> This is independent evidence of credibility.
>                              . . . .
>
> We heard about a lot of cocaine.  I think it was
> Randy Hodge, a couple of other people talked
> about seeing bricks of cocaine, not only from Chili
> and Esteban, but also Mr. Sisk's residence.  They

---

[4]Petitioner, in his response to the Government's Motion (denominated a
"Traverse") attempts to convert this Jencks Act claim into a claim  under both Jencks
*and* Brady v. Maryland, 373 U.S. 83 (1963).  That effort, however, must fail because
Petitioner has not established the existence of any exculpatory information which was
not provided to his attorney.

talked about large amounts, quarter pounds and
others.

Petitioner contends that these remarks improperly told the jury that

the witnesses were believable, they conveyed the prosecutor's personal

belief regarding the witnesses' veracity, and they were "so destructive" to

his right to a fair trial because they "encouraged the jury to convict [him] for

impermissible reasons."   The Government contends that the prosecutor did

not vouch for the credibility of the witnesses but merely argued that the

consistency in the witnesses' testimony established the reliability of that

evidence; and that the prosecutor's argument did not convey her personal

opinion as evidenced by her avoidance of the pronouns "I" and "me," and

the terms "believe" or "think."   The Government also contends that trial

counsel's tactical decision to ignore the prosecutor's stray but erroneous

comment -- that a person who actually did not testify (Hodge) had told the

jury that he saw large quantities of cocaine at Petitioner's home -- also was

not ineffective because, viewing the comment in the context of the entire

trial, showed that Petitioner suffered no prejudice from it.

The Government's arguments are persuasive in light of the facts in

this case.  In United States v. Lewis, 10 F.3d 1086, 1089 (4th Cir. 1993), the

Fourth Circuit explained that:

> Vouching generally occurs when the prosecutor's actions are such that a jury could reasonably believe that the prosecutor was indicating a personal belief in the credibility of the witness. Consequently, the prosecutor may not, among other things, make explicit personal assurances that a witness is trustworthy or implicitly bolster the witness by indicating that information not presented to the jury supports the testimony.

Applying the foregoing test to the instant case, it is clear that no such vouching took place. The prosecutor never told the jury of her personal beliefs, made personal assurances, or otherwise suggested that her witnesses were believable based upon any extra-judicial evidence. On the contrary, in response to defense counsel's attack on the credibility of the witnesses, the prosecutor properly referred the jury to the evidence which she had presented, and argued that her evidence established the witnesses' credibility.

Petitioner also cannot prevail on his claim regarding the prosecutor's erroneous attribution of certain testimony to Randy Hodge, who did not testify. In order to show that such remark rose to the level of reversible error, Petitioner must show, among other things, that the remark "prejudicially affected [his] substantial rights so as to deprive [him] of a fair trial." United States v. Chorman, 910 F.2d 102, 103 (4th Cir. 1990) (internal quotations omitted). The comment at issue here was made in isolation at

the final stage of Petitioner's trial.  Furthermore, Petitioner has not pointed to any evidence that the prosecutor deliberately placed the comment before the jury to divert attention to extraneous matters.  See United States v. Scheetz, 293 F3d 175, 185-86 (4th Cir. 2002) (discussing elements needed when proving prosecutor's remarks constituted reversible error).  In fact, other witnesses actually did testify concerning Petitioner's involvement with varying quantities of cocaine.  Furthermore, the Petitioner has not shown that the remark referring to cocaine caused him any prejudice, because the Court sentenced Petitioner only for his involvement with meth.  The Government's evidence sufficiently established Petitioner's involvement with at least 1½ to 5 kilograms of methamphetamine, and the Fourth Circuit affirmed that determination.   Therefore, trial counsel was not ineffective for having ignored the erroneous reference to Mr. Hodge.

Moreover, it has not escaped the Court's attention that the jury was instructed properly that it had the obligation of determining what the facts were "only from the evidence which [was] presented during the course of this trial"; and that the jury was to judge the witnesses' credibility and determine what, if any, testimony should have been believed. [Trial Tr. Vol. III, at 517 and 520].  Once an instruction is given, the jury is presumed to be capable of following it.  United States v. Jones, 907 F.2d 456, 460 (4th Cir.

1990).  Therefore, in the absence of some indication that the prosecutor's argument and remark were so powerful that a jury could not have ignored them, Petitioner cannot establish any prejudice by his attorneys' handling of these matters.

## C.  Inadequate advocacy

Petitioner claims that his trial attorney failed to subject the Government's case to adequate adversarial testing, and appellate counsel failed to raise that failure on appeal.  A review of this claim reflects, as the Government observed, that Petitioner is pointing to a litany of matters, including those he raised in his other claims, to assert that his attorneys failed to function as required by the Constitution.  Petitioner's various arguments, however, all fail.

### 1.  Alleged failure to attack certain evidence

Petitioner argues that trial counsel failed to attack the alleged inconsistency in William Clontz's testimony, Clontz's credibility, and the substance of the certain other witnesses' testimony against him.  Petitioner argues that "Everyone seated in the courtroom during Movant's trial knew good and well Government witness William Clontz was suborning bald-faced lies to this Court regarding Movant Sisk and his <u>alleged</u> <u>connections</u> <u>to</u> <u>the</u> '<u>Mexicans</u>'.  He (Clontz) was lying, the Government knew he was

lying." [Doc. 11 at 17]. Petitioner, however, fails to point to any evidence that should have been used to impeach Clontz, but which counsel failed to offer. The transcript reflects no inconsistency or credibility problems with Clontz's testimony. Rather, a reasonable reading of that testimony is that Clontz never had a direct "one-on-one" conversation with Petitioner about the source of his meth, but he heard Petitioner acknowledge that he was getting his drugs from "Chili," one of his Mexican co-conspirators. [Trial Tr. Vol. III, at 405-06]. Furthermore, Petitioner's argument that counsel failed to "present [his] defense that he was not involved in a conspiracy with the Garcias and educate the jury based on the facts of the Government's case" is baseless. Indeed, defense counsel presented Petitioner's sisters' testimony that they had never seen him deal drugs, and Petitioner does not point to any other individual whom he believes counsel should have called as a witness. Likewise, counsel vigorously cross-examined the witnesses who testified against Petitioner, yet also ensured that his cross-examinations did not elicit any testimony linking Petitioner with the Garcias when no such connection had been divulged on direct examination. Therefore, counsel's strategy wisely focused both on attacking the credibility of the witnesses, by pointing out their self-interest and motives to testify falsely, and on attacking evidence of Petitioner's involvement with the

conspiracy. Those efforts, however, were simply no match for the Government's presentation of testimony from his co-conspirators, his customers and law enforcement officers, the sum total of which connected Petitioner both to large quantities of drugs and the Garcias.

Moreover, to the extent that Petitioner is attacking the sufficiency of the evidence -- by his claims that counsel should have argued that certain of the witnesses' testimony established a buyer/seller relationship amongst them, and that counsel should have highlighted the absence of other classic indicators of a conspiracy -- that attack must be rejected. The Fourth Circuit already has determined that the evidence was sufficient to establish that Petitioner conspired to traffic in meth with the Garcias. Petitioner simply is not free to re-litigate this issue. See United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (the "law of the case" doctrine forecloses re-litigation of issues expressly or impliedly decided by the appellate court); **and** Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir. 1976) (absent an intervening change in law, issues decided on direct appeal may not be re-litigated in *habeas* case).

### 2. Alleged failure to investigate

Petitioner claims that trial counsel failed to investigate in order to learn the identity of the witnesses and informants who made statements

against him in order to prepare a defense.   Petitioner has failed, however, to rebut the record evidence showing that defense counsel actually obtained, through discovery, unredacted copies of witnesses' statements along with their criminal histories.  Petitioner does not explain what additional information counsel should have used in confronting those witnesses.  Once again, Petitioner's claim is based wholly on conjecture, and therefore this claim must be rejected.

### 3.  Alleged failure to move to strike

Nor can Petitioner establish an entitlement to relief based upon his attorney's decision not to move to strike the portion of Ricky Moore's testimony relating to his being supplied with drugs from the Garcias after his objection was sustained.  In fact, contrary to Petitioner's assertion the Court did not sustain defense counsel's objection to that part of the testimony. Rather, the Court sustained counsel's objection to Moore's testimony about his having seen Petitioner's truck at the Garcia's store.   [Trial Tr. Vol II, at 399].   In any event, the jury was given a proper instruction to exclude all testimony for which an objection was sustained. [Trial Tr. Vol III, at 523]. Therefore, since Petitioner has failed to show that the jury disregarded that instruction, this allegation must be rejected as baseless.

### 4. Improper motion for an acquittal

The Court also rejects Petitioner's claim that his attorney was ineffective for having moved for an acquittal when there was little chance of that motion succeeding. Indeed, Petitioner has failed to demonstrate that counsel neglected some other meritorious motion in favor of this motion which had little likelihood of success. Therefore, Petitioner is not entitled to any relief on this allegation.

### D. Mishandling of sentencing challenges

Petitioner claims that trial and appellate counsel both mishandled his sentencing challenges. For instance, Petitioner claims that trial counsel should have argued that his 1988 assault conviction could not be used to qualify him as a career offender because it was "more than 10 years old . . . ." Petitioner, however, was charged with having participated in a conspiracy which began in 1990 and continued until 2001. Co-conspirators Ricky Moore and Larry Patterson testified to drug deals with Petitioner in 1991 and 1998, respectively [Trial Tr. Vol II, at 397-99 and 188]. Those dates reflect illicit activities well within 10 years of Petitioner's 1988 and 1989 convictions . Thus, neither conviction was "stale" for career offender purposes.

Petitioner is also unable to establish any deficiency for his attorneys' decisions not to argue that the two convictions were excludable because he simply paid a fine as punishment for one, and received a 90-day suspended sentence for the other. Rather, § 4A1.2(a)(1) defines a prior sentence as "*any* sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere . . . ." Id. (emphasis added). Thus, the fact that Petitioner did not serve terms of incarceration for those convictions did not render them excludable for career offender purposes.

Moreover, to the extent that Petitioner argues that trial counsel should have opposed the assessment of criminal history points for these convictions, such argument is frivolous. Petitioner was sentenced based upon a Criminal History Category VI not by virtue of his criminal history points, but because the Court properly determined that he was a career offender based on his prior assault convictions. Any objection to the criminal history points would have been of no benefit to Petitioner. Thus, counsel's failure to raise such a useless objection cannot be a proper basis for arguing ineffective assistance.

Similarly, Petitioner is not entitled to any relief on his claim that counsel should have argued that the assault convictions were not "prior felony convictions" on the basis of the Guidelines' directive that any

"sentence which specifies a fine or other non-incarcerative disposition as an alternative to a term of imprisonment . . . is to be treated as a non-imprisonment sentence."  Indeed, the provision to which Petitioner refers relates to the assessment of points in the general computation of a defendant's criminal history and has no relevance to the calculation of a defendant's status as a career offender.  Rather, the career offender provisions are triggered when a defendant has sustained two "prior felony convictions" for, among other matters, crimes of violence.  U.S. Sentencing Guidelines § 4B1.1(a).  In the Application Notes to U.S. Sentencing Guidelines § 4B1.2, the term "prior felony convictions" is defined as "a prior adult federal or state conviction for an offense *punishable* by . . . imprisonment for a term exceeding one year, . . . regardless of the actual sentence imposed." (Emphasis added).  Because Petitioner concedes in his "Traverse" that "a maximum term of two years was available at the time Movant Sisk committed the acts in 1988 and 1989 . . . ," it is clear that these convictions were a proper basis for qualifying him as a career offender.  See United States v. Johnson, 114 F.3d 435, 444-45 (4th Cir. 1997) (approving use of assault on female conviction for career offender purposes and noting that the inquiry is whether the offense was "punishable" by more than one year's imprisonment at the time it was

imposed, not at the later time federal sentencing).  Petitioner cannot argue that his counsel was ineffective for having failed to raise frivolous arguments.

### E.  Remaining allegations of ineffectiveness

Finally, the Court has reviewed and found unpersuasive Petitioner's various and sundry other assertions concerning his attorneys' failures to meet his expectations, i.e., trial counsel's failure to show that witness Patterson "did not deal with Ventura Garcia in the conspiracy"; that "any one of several persons could very well have been responsible . . ." for placing the telephone numbers of two co-conspirators at Petitioner's home; that Petitioner's possession of the telephone number of an associate of Ventura Garcia did not link either him or that woman to the Garcias' conspiracy; that Ventura Garcia denied knowing Petitioner; and appellate counsel's resort to weak challenges to his sentencing as a career offender. To be sure, despite his post-trial professions of innocence, Petitioner conceded his involvement in the subject offense during allocution when he apologized, explained that his conduct was the result of his own drug addiction and sought the mercy of the Court. Therefore, these allegations, which largely are fueled by conjecture and second-guessing, must be rejected.

## IV.  ORDER

**IT IS, THEREFORE, ORDERED** that:

1.  Respondent's Motion for Summary Judgment is **GRANTED**;

2.  Petitioner's Motion to Vacate, Set Aside or Correct Judgment is hereby **DENIED**; and

3.  A Judgment dismissing this action is filed herewith.


Signed: October 23, 2009

Martin Reidinger
United States District Judge